**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: June 13, 2012**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 11-12942-CAG |
| | § | |
| KELLY L. KNAPPER, | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

**MEMORANDUM OPINION AND ORDER DENYING LORI ANDERSON'S MOTION FOR TURNOVER OF NON-EXEMPT ASSETS AND REQUEST FOR ADMINISTRATION BY THE CHAPTER 7 TRUSTEE**

Came on to be considered the above-styled and numbered case and, in particular, the Motion of Lori Anderson for Turnover of Non-Exempt Assets and Request for Administration by the Chapter 7 Trustee (the "Motion") filed March 2, 2012 (docket no. 30), on behalf of Creditor and party-in-interest Lori Anderson ("Anderson"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the matter is deemed a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O). This matter is referred to this Court under the District's Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408 and 1409. A hearing on the Motion was held on March 26, 2012. Having considered the arguments presented

1

and the applicable law, for the reasons stated below, the Court finds that Anderson's Motion should be DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

Lori Anderson, the Movant, and Kelly L. Knapper, the Debtor, were divorced in Texas in September, 2010 (docket no. 30, at 1). Pursuant to the terms of the divorce decree, the Debtor was to pay alimony in the amount of $1,950 per month and child support in the amount of $3,000 per month to Anderson beginning on October 1, 2010 (*id.*). The Debtor had been making the payments to Anderson until June 2011 after he became unemployed (docket no. 53, at 3). Thereafter, the Debtor was in arrears on his payments of both alimony and child support (docket no. 30, at 1).

The Debtor filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code on December 3, 2011 (docket no. 1). In the Debtor's "Schedule C—Property Claimed as Exempt," he checked the box that referred to 11 U.S.C. § 522(b)(3), which was his formal election of the exemptions under the state law (docket no. 7, at 7). In particular, the Debtor claimed a Roth IRA held at T.D. Ameritrade in the amount of $50,000 as exempt property pursuant to Texas Property Code § 42.0021 (*id.*). The § 341 meeting of Creditors was held on January 5, 2012, and no objection to the claimed exemption was ever filed.

On March 2, 2012, Anderson filed this Motion requesting that the Court (1) order T.D. Ameritrade[1] to turn over the Roth IRA to the Chapter 7 Trustee, and (2) instruct the Trustee to administer this asset for the benefit of Anderson. Anderson requests the funds to go toward the Debtor's alimony and child support arrearages as well as Anderson's attorney's fees for filing this Motion (docket no. 30, at 2).

---

[1] In the Motion, Anderson used "T.D. Ameriprise" and "T.D. Ameritrade" interchangeably (docket no. 30, at 1–2). The entity at issue is T.D. Ameritrade.

On March 26, 2012, the Court held a hearing to consider the Motion. Subsequently, upon the Court's request, Anderson submitted a Letter to the Court on April 3, 2012 to provide relevant case law supporting her position (docket no. 51). The Debtor submitted a Response Letter to the Court on April 12, 2012 (docket no. 53).

## PARTIES' CONTENTIONS

In the Motion, Anderson asserts that, because the Debtor is in arrears on his payments of both alimony and child support pursuant to their divorce decree, she is the holder of a domestic support obligation ("DSO") claim as defined by 11 U.S.C. § 101(14A) (docket no. 30, at 1). She contends that, in the face of a DSO claim, no asset owned by the Debtor is allowed to be claimed as exempt under 11 U.S.C. § 522(c)(1) (*id.* at 2). Further, Anderson contends that Congress appears to provide for the Chapter 7 Trustee's administration of this "non-exempt" asset for the benefit of the DSO claimant because 11 U.S.C. § 507(a)(1) authorizes the administrative expense of the trustee to be paid before the payment of a DSO claim (*id.*). Accordingly, Anderson requests that the Court order the Roth IRA to be turned over to the Trustee, and instruct the Trustee to administer this asset for the benefit of Anderson (*id.*). At the hearing on the Motion on March 26, 2012, Anderson presented similar contentions.

The Debtor listed the DSO claim as undisputed on his amended Schedule E (docket no. 14, at 1).[2] At the hearing, the Debtor argued that 11 U.S.C. § 522(c)(1) does not disallow the claimed exemptions, and that the Trustee does not have authority to administer the IRA as an exempt asset. Further, according to the Debtor, the proper venue for determining how the DSO claim will be resolved in this case is the state family court, in which the Debtor's motion to modify arrearages of alimony and child support is currently pending.

---

[2] In the amended Schedule E, filed on January 12, 2012, the Debtor listed a DSO in the amount of $4,950 per month payable to the Office of the Attorney General of Texas, Child Support Division (docket no. 14, at 1–2).

3

In her Letter submitted to the Court on April 3, 2012, Anderson provides four reported opinions specifically addressing 11 U.S.C. § 522(c)(1) in connection with DSO claims: *In re Vandeventer*, 368 B.R. 50 (Bankr. C.D. Ill. 2007); *In re Quezada*, 368 B.R. 44 (Bankr. S.D. Fla. 2007); *In re Ruppel*, 368 B.R. 42 (Bankr. D. Or. 2007); *In re Covington*, 368 B.R. 38 (Bankr. E.D. Cal. 2006) (docket no. 51, at 1). Anderson acknowledges that the four opinions unanimously hold that a Chapter 7 trustee does not have authority to object to or administer exempt assets for DSO claimants, but argues that the four cases are distinguishable from the instant case in that the moving party in those cases is the trustee, whereas the moving party here is the DSO claimant (*id.*). Anderson contends that the *Quezada* court noted that DSO claimants, not the trustee, may enforce the federal right provided by § 522(c)(1) against exempt property (*id.* at 2) (citing *In re Quezada*, 368 B.R. at 48). Moreover, Anderson argues that the courts in the four cases erred in characterizing the property at issue as exempt property, rather than non-exempt property, when a DSO claim is present (*id.* at 3). Furthermore, Anderson argues that the changes with the Bankruptcy Code, § 507(a)(1)(C) in particular, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), indicate "Congress's intent to permit a trustee's administration of otherwise exempt assets for the benefit of [a] DSO claimant among the various holders." (*Id.* at 2–3). The trustee, according to Anderson, is usually best positioned to evaluate competing DSO claims (*id.* at 3–4). Finally, Anderson urges the Court to rule in her favor because Congress, in amending the Bankruptcy Code, did not intend to "allow deadbeat parents to hide their wealth in IRAs and 401(k)s while not paying child support, alimony and/or spousal maintenance." (*Id.* at 4).

In his Response Letter on April 12, 2012, the Debtor rejects all of Anderson's arguments (docket no. 53). First, the Debtor points out that Anderson admittedly can find no case law

4

supporting her request for relief (*id.* at 1). In particular, the Debtor rejects Anderson's citation to *Quezada* for the proposition that § 522(c)(1) authorizes the bankruptcy court to turn exempt asset over to the DSO claimant and argues that *Quezada* simply holds that the bankruptcy court has jurisdiction to hear the claim (*id.* at 1–2). Moreover, the Debtor contends that whether it is the Chapter 7 trustee or the DSO claimant who brings the motion for turnover is of no legal difference, and that it does not change the characterization of the asset at issue as exempt (*id.* at 2). Furthermore, the Debtor argues that the state court, rather than the bankruptcy court, is the appropriate venue for any efforts by a DSO claimant to seek turnover relief (*id.* at 2–3). Finally, according to the Debtor, Anderson's contention that he is a deadbeat parent who is hiding his wealth in IRAs is without merit because "he has made payments on that arrearage to the best of his ability" and "is doing everything in his power to get back on his feet again, exactly what Chapter 7 provides." (*Id.* at 3).

## ANALYSIS

A debtor is required to turn over all property of the estate to the trustee. 11 U.S.C. § 542(a). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). After establishing property of the estate, the debtor may exempt certain property from the estate either under the federal exemptions or under state or other applicable exemption laws. 11 U.S.C. § 522(b). Objections to exemptions must be filed within thirty days of the creditors' meeting. Fed. R. Bankr. P. 4003(b). If no objections are filed, the claimed exemptions are deemed allowed. ***Taylor v. Freeland & Kronz***, 503 U.S. 638, 643–44 (1992); ***Coie v. Sadkin (In re Sadkin)***, 36 F.3d 473, 477–78 (5th Cir. 1994).

In this case, the property at issue is the Debtor's Roth IRA. The IRA is property of the estate as it was part of the Debtor's "legal or equitable interests" as of the petition date. Also, the IRA is properly exempt under 11 U.S.C. § 522(b) and the Texas Property Code § 42.0021. Moreover, the IRA is deemed exempt because no objection thereto was ever filed.

The dispute centers on whether, because of Anderson's DSO claim, BAPCPA grants Anderson the relief requested. In particular, there are two issues before the Court. First, may a DSO claimant, by filing a motion for turnover, request the claimed exemptions to be turned over to the DSO claimant or the trustee under § 522(c)(1)? Second, does § 507(a)(1) authorize the trustee to administer exempt property for the benefit of a DSO claimant? For the reasons that follow, this Court answers no to both questions.

I. **Section 522(c)(1) Does Not Provide for Turnover of Exempt Property.**

Section 522(c)(1), as amended by BAPCPA, provides:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt has arisen, before the commencement of the case, except—
  (1) a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable non-bankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in section 523(a)(5)).

11 U.S.C. § 522(c)(1). Section 523(a)(5), also amended by BAPCPA, excepts from discharge any debt for a DSO, which is defined by 11 U.S.C. § 101(14A). Thus, § 522(c)(1) provides that property deemed exempt in the bankruptcy case will remain liable for DSO debts even if the exempt property would not be reachable to satisfy these claims under applicable state law. *See, e.g.*, **In re Quezada**, 368 B.R. at 47.

Anderson argues that, according to § 522(c)(1), no asset owned by the Debtor is allowed to be claimed as exempt in the face of a DSO claim. The Court finds Anderson's interpretation

6

of § 522(c)(1) unpersuasive. In fact, other courts that considered this argument have unanimously rejected it. *See, e.g.*, *In re Bozeman*, 376 B.R. 813, 814 (Bankr. W.D. Ky. 2007); *In re Vandeventer*, 368 B.R. at 52–53; *In re Quezada*, 368 B.R. at 47; *In re Ruppel*, 368 B.R. at 44; *In re Covington*, 368 B.R. at 40. Section 522(c)(1) does not provide that property exempted under § 522 loses its exempt status with respect to the DSO debts; rather, it provides that notwithstanding its exempt status, exempt property remains liable for the DSO debts. *In re Vandeventer*, 368 B.R. at 52–53; *In re Quezada*, 368 B.R. at 47; *In re Ruppel*, 368 B.R. at 44; *In re Covington*, 368 B.R. at 40. Thus, § 522(c)(1) does not create a valid basis for disallowing the Debtor's exempt property. *In re Vandeventer*, 368 B.R. at 52–53; *In re Quezada*, 368 B.R. at 47; *In re Ruppel*, 368 B.R. at 44; *In re Covington*, 368 B.R. at 40. Anderson's characterization of the IRA—an exempt asset—as a non-exempt asset pursuant to § 522(c)(1) is, therefore, misplaced.

Anderson also argues that *Vandeventer*, *Quezada*, *Ruppel*, and *Covington* are nevertheless distinguishable from the instant case in that it is the Chapter 7 trustee who moves for the objection in those cases, whereas it is the DSO claimant who moves for the turnover in this case. The Court finds that Anderson's argument lacks force in supporting her position. First, whether it is a trustee or a DSO claimant that objects to the exemptions pursuant to § 522(c)(1) is of no difference under this circumstance because, as stated above, § 522(c)(1) simply does not provide that property exempted under § 522 loses its exempt status with respect to the DSO debts. Indeed, the *Quezada* court expressly held that § 522(c)(1) does not create a valid basis for an objection to exemptions by *the trustee or a DSO creditor*. *In re Quezada*, 368 B.R. at 46 (emphasis added). Second, even if Anderson, as a DSO claimant, may object to the exemption of the IRA pursuant to § 522(c)(1), she lacks standing to bring the turnover action. A

7

section 542 turnover involves an action to recover money or property to the bankruptcy estate. *See* 11 U.S.C. § 542. The trustee is the representative of the bankruptcy estate. 11 U.S.C. § 323(a). In a Chapter 7 case, "there is no textual basis in the Bankruptcy Code to support the notion that a non-trustee, such as a creditor . . . has independent standing to pursue . . . other estate causes of action [such as a turnover action] . . . ." ***Reed v. Cooper (In re Cooper)***, 405 B.R. 801, 804 (Bankr. N.D. Tex. 2009).[3]

Anderson further argues that the *Quezada* court expressly recognized a DSO claimant' right to enforce the DSO claim against exempt property pursuant to § 522(c)(1):

> Section 522(c)(1) grants DSO creditors a federal right of action against exempt property. This federal right trumps state law which may otherwise shield the asset from execution. Since this federal right is provided in the Bankruptcy Code, a proceeding to enforce that right would be a proceeding arising under title 11, thus creating jurisdiction under § 1334(b). *See In re Toledo*, 170 F.3d 1340, 1345 ("Arising under" proceedings are matters invoking a substantive right created by the Bankruptcy Code).

***In re Quezada***, 368 B.R. at 49. The Court finds Anderson's interpretation of the *Quezada* court's language unconvincing. The above-cited language illustrates that the bankruptcy court has jurisdiction if a DSO creditor seeks to enforce the DSO claim against exempt property in the bankruptcy court because § 522(c)(1) creates a federal right. *Id.* The statutory language of § 522(c)(1) does not suggest that § 522(c)(1) itself affirmatively authorizes the bankruptcy court to enforce a DSO creditor's federal right against exempt property. *See* ***In re Wolf***, No. 11-51327, 2012 WL 32480, at *2 (Bankr. E.D. Ky. Jan. 6, 2012) (rejecting that section 522(c)(1) creates an enforcing mechanism against exempt property (citing ***Davis v. Davis (In re Davis)***, 170 F.3d 475, 481 (5th Cir. 1999))).[4]

---

[3] In *Reed v. Cooper (In re Cooper)*, 405 B.R. at 803, the estate causes of action at issue are a section 542 turnover action and certain state law fraud causes of action.

[4] The Court of Appeals for the Fifth Circuit in the pre-BAPCPA case, *Davis v. Davis (In re Davis)*, on hearing en banc, was called upon to interpret then § 522(c) and to determine whether the debtor's ex-spouse could utilize the

Finally, Anderson's Motion for Turnover should be denied because the Motion fails on procedural grounds. A motion for turnover can only be used by the trustee if seeking turnover from the debtor. *See* Fed. R. Bankr. P. 7001(1). All other turnovers must be filed as adversary proceedings. *Id.* "A turnover proceeding commenced by motion rather than by [adversary] complaint will be dismissed . . . ." *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) (internal citations omitted). In this case, Anderson is a creditor, not the Trustee, and accordingly, she should have commenced the turnover action in an adversary proceeding, rather than resorting to a motion.

In sum, § 522(c)(1) does not provide a valid basis for disallowance of exemptions, and a DSO claimant may not, by filing a motion for turnover, request the claimed exemptions to be turned over to the DSO claimant or the trustee under § 522(c)(1). Accordingly, the Court finds that Anderson's request for turnover of the IRA should be DENIED.

**II.     Sections 507(a)(1) Does Not Authorize the Trustee to Administer Exempt Property.**

Anderson further argues that Congress, in amending the Bankruptcy Code through BAPCPA, intended to permit a trustee's administration of otherwise exempt assets for the benefit

---

Texas turnover statute to force seizure and sale of the debtor's Texas homestead in order to pay a § 523(a)(5) nondischargeable debt. 170 F.3d 475, 478–79 (5th Cir. 1999). The court held that (1) § 522(c)(1) did not preempt Texas law, which prohibited the seizure and sale of a homestead for payment of alimony or child support; and (2) § 522(c)(1) was not self-executing and did not provide any method for execution based on the support creditor's rights. *Id.* at 483. BAPCPA amended § 522(c)(1) to expressly add the language: "notwithstanding any provision of applicable non-bankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in section 523(a)(5)." 11. U.S.C. § 522(c)(1) (2005). Therefore, the first holding of *Davis* was effectively overruled by BAPCPA. *See, e.g.*, Michaela M. White & James P. Caher, *The Dog That Didn't Bark: Domestic Support Obligations and Exempt Property After BAPCPA*, 41 Fam. L.Q. 299, 312 (2007). It is less clear whether the second holding of *Davis* remains valid after BAPCPA, in other words, whether BAPCPA makes § 522(c) self-executing and provides the DSO claimant with a method of enforcing the claim against exempt property. *Id.* at 320 n.66. The *Davis* court cited the following language as creating an affirmative mechanism for the collection of spousal support: "Notwithstanding this or any other federal or state injunction of liability for exempt property, exempt property shall be liable for debts of a kind specified in section 523(a)(5)." *Davis*, 170 F.3d at 481 n.5. This proposed language in *Davis* is similar but not identical to the language of BAPCPA's amendment to § 522(c)(1). The Fifth Circuit has not spoken to the effect of BAPCPA on the second holding of *Davis* yet.

of a DSO claimant. In particular, Anderson finds support from § 507(a)(1)(C),[5] which provides in relevant part: "If a trustee is appointed . . . the administrative expenses of the trustee . . . shall be paid before payment of [DSO claims], to the extent that the trustee administers assets that are otherwise available for the payment of [DSO claims]." 11 U.S.C. § 507(a)(1)(C).

According to Anderson, § 507(a)(1)(C), in providing for compensation for a Chapter 7 trustee who undertakes to assist the holder of a DSO to collect that claim, also provides specific authority for the trustee to administer those assets that are available for the payment of the DSO. Other courts that previously considered this argument have rejected it. *See, e.g.*, ***In re Vandeventer***, 368 B.R. at 53–54; ***In re Quezada***, 368 B.R. at 47–48. A chapter 7 trustee has the duty to collect and reduce to money the property of the estate. 11 U.S.C. § 704(a)(1). "When a debtor exempts property, it is effectively removed from the estate." ***In re Covington***, 368 B.R. at 40–41 (internal citation and footnote omitted). Therefore, "[e]xempt property is property of the estate which a chapter 7 trustee cannot liquidate or distribute to creditors holding allowed claims." ***S & C Home Loans, Inc. v. Farr (In re Farr)***, 278 B.R. 171, 177 (B.A.P. 9th Cir. 2002) (citing ***Owen v. Owen***, 500 U.S. 305, 308 (1991)); ***In re Ruppel***, 368 B.R. at 43–44. Here, the IRA is properly exempted and effectively removed from the estate. Therefore, the Trustee has no authority to administer the IRA for the benefit of creditors in general or Anderson, a DSO creditor, in particular.

---

[5] In addition to § 507(a)(1)(C), Anderson lists other provisions in BAPCPA providing enhanced rights for DSO claimants:
    1) § 362(b)(2)(B) provides that the holder of a DSO claim may levy on non-estate assets without violating the automatic stay;
    2) § 101(14A) provides an expanded definition for domestic support obligation;
    3) §§ 523(a)(5) and 1328(a)(2) provide that a discharge in chapter 7, 11, 12, or 13 does not discharge a debt for a DSO;
    4) § 507(a)(1)(A) creates a first priority for a DSO for distribution of estate assets by the trustee;
    5) § 547(c)(7) excludes payment of a DSO from a trustee's preference action; and
    6) § 704(a)(10) requires the trustee to provide notice to a DSO claimant of the claimant's rights to payment in the bankruptcy, information regarding assistance by government agencies in collecting child support during and after the bankruptcy case, and to provide other specified information.
(Docket no. 51, at 3) (citing ***In re Ruppel***, 368 B.R. at 44 n.4).

Congress, by enacting BAPCPA, amended § 507(a)(1) to provide DSO claimants first priority for distribution of estate by the trustee. *See* 11 U.S.C. § 507(a)(1). Congress, however, did not amend the Bankruptcy Code to allow a trustee to liquidate exempt assets for distribution to a DSO claimant. Congress left intact § 704(a)(1), which specifically prescribes the duties of a trustee. In fact, in amending § 704, Congress only amended § 704(a)(10) and (c) to require a trustee to provide written notice to DSO claimants and state child support enforcement agencies of their rights in collecting child support during and after the case. ***In re Vandeventer***, 368 B.R. at 54. Moreover, § 507, setting forth the priority of distributions, has to be read in conjunction with the distribution provisions in § 726. Section 726 explicitly provides that in payment of claims of the kind specified in § 507, wherein DSO claims have first priority, only *property of the estate* shall be distributed. ***In re Quezada***, 368 B.R. at 48 (citing 11 U.S.C. § 507) (emphasis in original). Therefore, "[s]ection 507 simply provides the priorities for distribution of property of the estate; it does not grant authority to a trustee to liquidate exempt property." ***In re Vandeventer***, 368 B.R. at 54.

Anderson does not cite, and the Court has not found, any case law to support Anderson's argument for administration of exempt property by the trustee to pay DSO claims.[6] Anderson, however, offers two additional policy arguments. First, Anderson argues, in amending § 507, Congress did not intend for the bankruptcy courts to be a refuge for deadbeat parents trying to escape their obligations to their children and former spouses. It is true that Congress never intended § 507, or the entire Bankruptcy Code, to provide debtors a refuge to escape DSO

---

[6] Anderson finds support in one published article: Dennis G. Bezanson & Gary B. Rudolph, *The "Super-Priority" of a "Domestic Support Obligation" ("DSO"): The Trustee as Liquidator of Exempt Property for the Benefit of DSO Claimants; and Other DSO Issues*, 22 J. Nat'l Ass'n Bankr. Trustees 24 (2006) ("NABTalk"). The *Quezada* court carefully considered NABTalk and found that the authors' arguments "do not penetrate the statutory roadblock of § 704(a)(1) which precludes a trustee from selling exempt property." ***In re Quezada***, 368 B.R. at 48. This Court agrees with the *Quezada* court's analysis and finds the arguments in NABTalk unpersuasive.

liabilities. This, however, does not mean that Congress intended § 507 to provide the trustee authority to administer exempt property for DSO claimants.[7] As the foregoing analysis shows, if Congress had intended the trustee to administer exempt assets for DSO claimants, it could have amended the Bankruptcy Code to expressly impose such an obligation.

Second, Anderson argues that there may be competing DSO claims, and the trustee is usually best positioned to evaluate those claims and distribute the funds to the various holders according to the proper priorities or *pro rata* in a clear and transparent way that allows all parties to participate and protect their interests. The Court disagrees with this argument. A chapter 7 trustee "has a unique role as an independent fiduciary, with a completely different perspective and interest in a bankruptcy estate than an individual creditor." **Reed**, 405 B.R. at 804. The trustee generally will not administer an asset unless it will produce a net return for the estate—for the benefit of creditors generally. *See, e.g.*, **In re Covington**, 368 B.R. at 41. Administering the exempt property for the benefit of DSO claimants is not for the benefit of the creditors generally. Especially, as the *Covington* court noted, when a government unit—in this case, the Attorney General's Office—is collecting the claim for the benefit of the DSO claimant, it is unnecessary to involve the assistance of the trustee, which would come at a price—the trustee's administrative expenses. *Id.*

---

[7] There are other remedies that DSO claimants may have against debtors who fraudulently claim exemptions of retirement accounts. For instance, DSO claimants may object to such fraudulent retirement accounts, and if the objection is upheld, the retirement accounts lose their exempt status and are subject to the trustee's administration. *See, e.g.*, **In re Jarboe**, 365 B.R. 717, 722 (Bankr. S.D. Tex. 2007) (holding that an IRA that has been established fraudulently would not be exempt). In this case, however, there is no objection or allegation that the Debtor set up the IRA fraudulently before filing bankruptcy to escape DSO liabilities. The Debtor continued making child support payments until after he became unemployed, and subsequently filed a motion to modify the amount of child support arrearages, which is currently still pending in the state court.

In sum, § 507(a)(1)(C) does not authorize a trustee to administer exempt property for DSO claimants. Accordingly, the Court finds that Anderson's request for the Trustee's administration of the Debtor's IRA should be DENIED.

## CONCLUSION

For the foregoing reasons, the Court finds that Anderson's Motion for Turnover of Non-Exempt Assets and Request for Administration by the Chapter 7 Trustee filed March 2, 2012 (docket no. 30) should be DENIED.

IT IS SO ORDERED.

# # #